593 P.2d 71

**Rudolfo ROYBAL, Pete Garcia and Filiberto Padilla, Plaintiffs-Appellees,**

v.

**Donaldo A. MARTINEZ, Defendant-Appellant.**

**Appeal of Donaldo Martinez, Contemnor-Appellant.**

No. 3634.

Court of Appeals of New Mexico.

March 20, 1979.

Donald A. Martinez, Las Vegas, for defendant-appellant.

Jeff Bingaman, Atty. Gen., Ralph W. Muxlow, III, Asst. Atty. Gen., for appellees.

Ronald J. VanAmberg, Solomon, Roth & VanAmberg, Santa Fe, for amicus curiae.

## OPINION

WALTERS, Judge.

Defendant Martinez, a member and chairman of the West Las Vegas Board of Education, was found to have violated the terms of a preliminary injunction. After a hearing, the trial court imposed a 90-day jail sentence, thereby fixing the offense charged and found as the petty misdemean-

or of criminal contempt, i. e., punishment for past violations of an order of the court.

Defendant has appealed, urging five grounds for reversal. Since we find his first point dispositive of the matter, we do not discuss the remaining arguments presented to the court in the briefs of the litigants. For the same reason, we need not decide whether the appellee in this contempt appeal is the State or the plaintiffs in district court. We accept, and have considered, answer briefs filed by both.

On April 24, 1978 at 11:30 in the morning, plaintiffs filed a motion and affidavit alleging that they, also school board members, had requested the school superintendent to call a special meeting for April 20th, purportedly in accordance with an injunctive order entered by the trial court on April 19th wherein authority for calling special meetings had been granted to the board chairman *or* to a majority of the board. The same injunction prohibited all school board members from interfering with the conduct of any properly called meeting. The motion contained further allegations that defendant attended the April 20th meeting and announced that it was an improperly called meeting; he ruled all motions out of order; he accused plaintiffs of violations of the law and forfeiture of their offices, and when plaintiffs "refused to acknowledge the mandates and declarations of the Defendant, the Defendant ordered the Deputy Sheriff . . . to arrest the Defendant (sic)." Plaintiffs contended such conduct violated the previous orders of the court and they sought punishment in contempt.

On April 25, 1978, at 11:00 o'clock in the morning, an order was filed directing defendant to appear on May 12th and "show cause why he should not be held in contempt . . . and punished appropriately," and ordering that a copy of the order be served personally on Mr. Martinez.

On the morning of the hearing appellant filed a sworn document entitled "Special Appearance and Motion to Quash," on the ground that he had never been served with the order to show cause and knew of the

hearing only because an article in the local newspaper had provided that information.

 The issue of personal service in criminal contempt proceedings had been presented on appeal on prior occasions, the most recent appearing to be *Lindsey v. Martinez*, 90 N.M. 737, 568 P.2d 262 (Ct. App.1977), in which several earlier Supreme Court decisions were cited. We have consistently recognized the two types of contempt: "direct"—contumacious words spoken or acts committed in the presence of the court, and "indirect" or "constructive" contempt—similar misconduct, or some disobedient, scurrilous, or other defiant act engaged in out of the court's presence. Compare *Matter of Avallone*, 91 N.M. 77, 518 P.2d 870 (1978); *State v. Driscoll*, 89 N.M. 541, 555 P.2d 136 (1976), and *State v. Armijo*, 38 N.M. 280, 31 P.2d 703 (1934). If the act be done in the court's presence, the judge has the power "to summarily adjudge and punish for the contemptuous conduct" without the necessity of filing a motion or information against the contemnor. *Driscoll, supra*. In cases of constructive contempt, however, the rule is uniform and imperative that to confer jurisdiction on the court, an affidavit setting forth the alleged acts of contempt must be filed, and an order to show cause must be issued and personal service made upon the defendant, *Armijo, supra; Lindsey, supra; Momsen-Dunnegan-Ryan Co. v. Placer Syndicate Mining Co.*, 41 N.M. 525, 71 P.2d 1034 (1937); or defendant must be proceeded against by information, citation, summons, or some other form of notice, and personal service. *Momsen-Dunnegan-Ryan, supra; Lindsey, supra.*

Without receiving testimony on defendant's claim that he had not been served with the order and notice of hearing, the trial court ruled that an unsworn Return of Service signed by the sheriff and filed in open court on the morning of May 12th concluded the matter. The return reflected Defendant's acknowledgement of receipt of the document(s) served by the following notation at the bottom of the Return of Service:

Rec'd. 4–24–78—1:40 p. m.

s/ Donaldo A. Martinez.

The document itself, as filed, and with some of the blanks filled in, read:

I, Persiliano Santillanes, Sheriff of San Miguel County, State of New Mexico, do hereby certify that I served the within Order to Show Cause in the county aforesaid, in person to Donaldo A. Martinez, on the 24th day of April, 1978.

s/ Persiliano Santillanes
SHERIFF

————————————————

DEPUTY

DATE SERVED: 4–24–78

Fees: $5.00

SUBSCRIBED AND SWORN TO BEFORE ME THIS ——

DAY OF ——, 197——.

————————————————

NOTARY PUBLIC

My Commission expires————————

The words "Order to Show Cause" were written in ink over liquid paper correction fluid which had almost completely obliterated other words underneath. Examination of the document before a strong light discloses that the words "Affidavit and Motion to Show Cause" originally had been written into the blank and erased by application of the correction fluid. No evidence was adduced by plaintiffs from the sheriff or anyone else to explain the "correction" of the return of service, nor how an order to show cause that was not filed until almost twenty hours later could have been served on defendant the previous day. Defendant did not deny that Sheriff Santillanes had served on him the underlying motion and affidavit upon which the order to show cause was founded, but until the date of hearing he had no certain knowledge that the three documents were related.

■ The State points to a document filed by appellant on April 27th entitled "Response to Order to Show Cause" as waiving any claim that he had not been served with a copy of the show cause order. The State overlooks (as did the trial court) defendant's testimony that he responded by affidavit to an article appearing in the local newspaper by which he learned that an order had been issued; that his "Response" was directed not to the allegations or contents of plaintiffs' motion and affidavit or to the trial court's order, but to the text of the newspaper story; that defendant had no way of knowing whether the order to show cause had been issued on the motion and affidavit served on him on April 24th or whether it resulted from some other supporting motion and affidavit; and that the sworn motion to quash, with attached copy of the newspaper clipping, was then before the court in connection with defendant's entry of special appearance contesting jurisdiction for lack of service. It was only after the court ruled on the motion to quash that a copy of the order to show cause was shown to defendant. Defendant's special appearance and motion to quash, as well as the state of the record, dispose of the State's claim of waiver.

The trial court focused on the fact that defendant was present in court and knew the contents of a motion for an order to show cause. Relying on *In re Stephen Canavan*, 17 N.M. 100, 130 P. 248 (1912), the State claims that Martinez subjected himself to the jurisdiction of the court. *Canavan* announces the rule to be that "[a]ppearance and answer without objection cures irregularity in the commencement of the proceeding." Here, defendant did object. His "Response" cannot be taken as an answer to an order he had never seen; at most, his "Response" was a traverse of the grounds relied on by plaintiffs in seeking the order to show cause. It is uncontradicted that defendant appeared expressly contesting jurisdiction over his person because of lack of personal service of the order to show cause. The court ruled: *"I don't think there is any defect in the service* in this matter." That conclusion does not follow automatically simply because of defendant's awareness of a motion filed and his presence in court. Defendant appeared specially for the very purpose of asserting the defect in service despite his receipt of a motion and affidavit (which might have been totally unrelated to the order to show

**634**

cause later issued), and plaintiffs offered no credible evidence that defendant had been served with the order that was entered a day after a motion and affidavit had been filed and served on him.

■ It was necessary that the May 12th criminal contempt proceedings be commenced by service upon defendant, personally, of either a summons, information, or the order to show cause. *Lindsey v. Martinez, supra.* The only evidence before the court was a return of service showing delivery of the order to defendant on a date prior to the date the order was issued. To our minds, the return of service patently reflects an alteration regarding the document(s) served on defendant, and the record conclusively negates any suggestion that defendant was proceeded against in the manner mandated by the nature of the charge. The trial court had no jurisdiction over the person of defendant. *Lindsey, supra; Eaton v. Cooke,* 74 N.M. 301, 393 P.2d 329 (1964).

The judgment of the court is reversed and the cause remanded for such proceedings as are consistent with this opinion.

IT IS SO ORDERED.

WOOD, C. J., and ANDREWS, J., concur.