708 P.2d 1048

**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Jeff JASPER, Defendant.**

**In re CONTEMPTS OF Michael F. McCORMICK, Ronald R. Walker, Stephen S. Wisniewski and Chris Wyatt, Respondents-Appellants.**

**Nos. 7293, 7294, 7309 and 7310.**

Court of Appeals of New Mexico.

Feb. 23, 1984.

Michael F. McCormick, pro se.

Ronald R. Walker, pro se.

John E. Capps, City Atty., Roswell, for respondents-appellants.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet E. Clow, Chief Public Defender, J. Thomas Sullivan, Appellate Defender, Henry Quintero, Asst. Appellate Defender, Santa Fe, for amicus curiae Public Defender Dept.

## OPINION

MINZNER, Judge.

These are appeals from criminal contempt citations issued, after notice and a hearing, at the conclusion of a criminal trial. The trial court held in contempt Michael F. McCormick and Ronald R. Walker, district attorneys who were involved in prosecuting the criminal charges, and Deputy Chief Stephen S. Wisniewski and Captain Chris Wyatt, of the Roswell Police Department. The trial court found that the four respondents' failure to comply with the trial court's order of discovery and NMSA 1978, Crim.P. Rule 27 (Repl.Pamp. 1980)[1] was negligent rather than intentional, but that their negligent conduct constituted indirect criminal contempt, for which a fine of $100 each was appropriate. The four cases were consolidated for decision by this Court.

On appeal, the four respondents argue that the trial court erred in ruling that their negligent failure to comply with a court order and rule justified a contempt citation or, in the alternative, that there was insufficient evidence of negligent conduct to sustain the contempt citations. In addition, we consider whether the police officers failed to file timely appeals.

We decide that the police officers did file timely appeals. We reverse the convictions of all four respondents on the ground that a finding of negligence under the circumstances of this case will not support the contempt citations against any of the respondents.

## I. WHETHER CHIEF WISNIEWSKI AND CAPTAIN WYATT FILED TIMELY APPEALS.

The timely filing of a notice of appeal is a jurisdictional prerequisite to our ability to consider the appeal. *Gonzales v. City of Albuquerque*, 90 N.M. 785, 568 P.2d 621 (Ct.App.1977). We should consider this issue, even on our own motion. *Rice v. Gonzales*, 79 N.M. 377, 444 P.2d 288 (1968).

The trial court entered a decree finding all four respondents guilty of indirect criminal contempt on June 8, 1983 and assessing a fine of $100 each. The trial court informed them they were entitled to appeal the decision but did not inform them of their right to proceed, if indigent, at State expense. Respondents McCormick and Walker filed timely notices of appeal on June 20, 1983. *See* NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App.R. 202(a) and 302(a) (Spec.Supp.1983). Chief Wisniewski and Captain Wyatt filed their notices of appeal on July 1, twenty-four (24) days after filing of the order and eleven (11) days after the initial notices of appeal were filed.

NMSA 1978, Crim.P. Rule 54 (Repl.Pamp.1980) required the trial court to advise a defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to proceed at State expense. The rule further provided that the failure of the court to so advise tolled the time for taking an appeal. The rule applied to this case because the proceeding to show cause was an indirect criminal contempt, because the police officers in effect pleaded not guilty, and because the trial court did not advise the police officers of their right to proceed at State expense if they could not pay. *In re Doe*, 99 N.M. 517, 660 P.2d 607 (Ct.App.1983). Application of the rule was mandatory as to all defendants. *Cf.* NMSA 1978, Crim.P.R. 54 (Cum.Supp.1983) (which was revised effective October 1, 1983). Chief Wisniewski and Captain Wyatt filed timely appeals.

We do not reach the question, raised in the briefs, whether the appellate three-day

---

1. Rules 27, 28, and 54 were amended effective October 1, 1983. NMSA 1978, Crim.P.R. 27, 28, 54 (Cum.Supp.1983).

mailing rule applies in this case. *Compare Trujillo v. State*, 90 N.M. 666, 568 P.2d 192 (1977) (applying three-day rule to the requirement that counsel has ten days from the date of the clerk's notice to file a memo in opposition to summary disposition) and *Socorro Livestock Market, Inc. v. Orona*, 92 N.M. 236, 586 P.2d 317 (1978) (holding that three-day rule only applies when the event starting time running is service).

## II. WHETHER THE TRIAL COURT ERRED IN FINDING RESPONDENTS GUILTY OF CONTEMPT FOR NEGLIGENT FAILURE TO COMPLY WITH THE DISCOVERY ORDER OF FEBRUARY 23, 1983 AND WITH RULE 27.

On December 3, 1982, a criminal information was filed against the defendant, Jeff Jasper, stemming from a high-speed chase which occurred October 2, 1982. During the chase, radio transmissions were recorded on tape by the Roswell Police Department's dispatcher. Early in December 1982, counsel for the defendant asked Jeanne Lahrman (Lahrman), the assistant district attorney originally assigned to defendant's case, for a copy of the police dispatcher's tape of October 2, 1982. Lahrman called the police department and asked someone to check on it. On December 29, 1982, the tape not having been produced, defendant's counsel brought a motion for disclosure by the State, pursuant to Rule 27; requesting copies of tape recordings of the police radio communications on the night of the incident.

The police department's procedures for handling dispatch tapes were not well-articulated during the period in question. Essentially, the department had one tape for each day of the month. The tapes were rotated monthly. There were several extra tapes. At the end of each day, the dispatcher on duty took the tape and filed it in the radio room. If the dispatcher felt the tape contained anything significant, the tape was removed from the rotation and put on a special shelf. One of the extra tapes was inserted into the rotation. The removed tape was then re-recorded onto a cassette tape. If the tape was not removed from rotation, it would be erased and used again on the corresponding day of the following month.

The October 2nd tape had been removed from rotation and filed on the special shelf in the radio room. It was never taken to the evidence room. A replacement tape was inserted into the rotation in November. Only Captain Wyatt, the administrator in charge of the tapes, knew that the tape had been preserved and knew where it was located. The department's procedures were unknown to the district attorneys and not widely known within the department itself.

Lahrman left the D.A.'s office in mid-February 1983. Respondent Walker assumed responsibility for the case, and counsel for defendant asked him for a copy of the tape. The trial court entered an order granting defendant's discovery motion on February 23, 1983. Walker, who was not aware of the police department policy with respect to tapes, believed the tape had been destroyed, but he called the police department and asked someone to check on it. He testified that he spoke to Captain Wyatt at least twice. He never delivered a copy of the order to the police department.

Respondent McCormick assumed responsibility for the case shortly before trial due to scheduling conflicts. McCormick noticed the discovery order in the file, took a copy of it to the police department the day before trial, and attempted to locate the tape with the help of respondent Wisniewski. This was the first time anybody at the police department had seen a copy of the order. The search did not produce the tape.

Captain Wyatt was aware throughout these proceedings that the tape had been preserved. He testified that he could not recall speaking with Walker or ever having been asked if the tape had been preserved.

The October 2nd tape was finally located on April 14, 1983, the second day of defendant's trial. At that time, a police officer who had been involved in the original inci-

dent took the tapes to the District Attorney's office. The tape was then given to defendant's counsel. The jury found defendant not guilty of all counts.

■ The trial court is empowered to hold the prosecutor in contempt for failure to comply with Rule 27. The trial court also has the inherent power to punish for contempt of court. Neither the rules of criminal procedure nor the court's inherent power to punish for contempt of court as developed in the New Mexico cases support a finding of contempt under the circumstances of this case.

### A. *Rule 27, Rules of Criminal Procedure.*

Rule 27 mandates disclosure of certain information by the State within ten days after arraignment. Under Rule 27(g), if the State fails to comply, the trial court may enter an order pursuant to NMSA 1978, Crim.P. Rule 30 (Repl.Pamp.1980) permitting further discovery, suppressing evidence, or granting a continuance. Rule 27(g) also authorizes the trial court to hold "the prosecutor in contempt or take other disciplinary action pursuant to Rule 52 of these rules." NMSA 1978, Crim.P. Rule 52 (Repl.Pamp.1980) provides that an attorney who willfully fails to observe the requirements of these rules "may be held in contempt of court and subject to disciplinary action."

■ Rule 27(g) and NMSA 1978, Crim.P. Rule 28(d) (Repl.Pamp.1980) contain similar provisions. Rule 30(b) contains authority to hold an attorney in contempt under Rule 52. The language granting the trial court power to hold an attorney in contempt for failure to disclose under Rules 27(g), 28(d), and 30(b) first appeared in all three rules at the same time, in 1980. These three rules establish disclosure requirements which ought to be construed as a whole. *See* *State v. Stephens*, 99 N.M. 32, 653 P.2d 863 (1982). We believe a trial court's power to hold the prosecutor in contempt for non-compliance under these rules in Rule 27(g) and Rule 28(d), like the reference in Rule 30(b), incorporates by reference the re-

quirement of willful non-compliance. We read the entire phrase "or hold the prosecutor in contempt or take other disciplinary action" as subject to a finding of willfulness.

Although willfulness under Rule 52 has not been defined, the courts have addressed the question in an analogous situation. In the context of sanctions for failure to provide or permit discovery, the supreme court has approved the following definition of "willfulness":

> [A] willful violation * * * is any conscious or intentional failure to comply therewith, as distinguished from accidental or involuntary non-compliance, and * * * no wrongful intent need be shown to make such a failure willful (citations omitted).

*Rio Grande Gas Co. v. Gilbert*, 83 N.M. 274, 278, 491 P.2d 162, 166 (1971).

■ Having reviewed the record on appeal, we find that the actions of respondents McCormick and Walker were not willful within the meaning of Rule 52. Their actions were not intentional, by the trial court's finding. Respondent McCormick's failure to produce the tape was involuntary or accidental, because he did not know of the general procedure with respect to the tapes which had allowed the tape in question to be preserved, and because he believed the police had not preserved the tape. Respondent Walker's failure to produce the tape was also involuntary or accidental. The trial court found, during the hearing to show cause, that there had been a failure of communication between respondent Walker and Captain Wyatt. Although the trial court observed that each of the parties had failed in some respect to perform as required by Rule 27, the trial court did not find that the failure of communication evidenced conscious or intentional failure to comply. In fact, the record reveals that the delayed production of the tape resulted from inadequate procedures and poor communication.

■ In addition, we find that the trial court lacked authority under Rule 27(g) to

hold the police officers for contempt. The language of the rule refers only to the prosecutor. In this respect, the rule seems somewhat inconsistent, because the rule imposes duties of disclosure generally upon the State, but Rule 27(g) and Rule 30(b) provide for contempt only with respect to the prosecutor or other attorney.

III. WHETHER THE TRIAL COURT EXCEEDED ITS INHERENT POWER TO FIND RESPONDENTS IN CONTEMPT OF COURT FOR VIOLATION OF THE FEBRUARY 23, 1983 DISCOVERY ORDER OR FOR BREACH OF DUTY UNDER RULE 27.

▇▇▇ Courts have the inherent power to punish for criminal contempt in order to vindicate public authority. *State v. Magee Pub. Co.*, 29 N.M. 455, 224 P. 1028 (1924). Criminal contempt includes acts "done in disrespect of the court, or which obstruct the due and proper administration of justice, or which tend to bring the court into disrepute in the form of public opinion." *Id.* at 471, 224 P. at 1029. Criminal contempt includes violation of a court order. *See State v. Our Chapel of Memories of New Mexico, Inc.*, 74 N.M. 201, 392 P.2d 347 (1964).

▇▇▇ Inability to comply with a court order is a defense. *See Andrews v. McMahan*, 43 N.M. 87, 85 P.2d 743 (1938) (in which the court excused a contemner's failure to comply with divorce decree provisions on an adequate showing that he lacked sufficient financial resources, through no fault of his own, to comply). Chief Wisniewski and Captain Wyatt, because they were unaware of the court order until shortly before the tape was found, were unable to comply with the order.

▇▇▇ Respondent McCormick complied with the court order. He complied very late in the process, on the second day of trial after the defense had completed cross-examination, but he nevertheless complied. The order to disclose contained no date for compliance. Under the circumstances of this case, there was insufficient evidence to find respondent McCormick guilty of indirect criminal contempt. No issue has been raised concerning the trial judge's authority to preside in the contempt hearings herein. *See State v. Stout*, 100 N.M. 472, 672 P.2d 645 (1983).

Respondent Walker failed to comply with the trial court's discovery order while he was handling the file. He testified that he attempted to obtain the tape by making inquiries of the appropriate police officer. Captain Wyatt does not recall the attempts. The trial court judge found that there was a failure of communication and, because he found that all respondents had failed to perform duties under the Rules of Criminal Procedure and the trial court's discovery order, implicitly attributed the failure of communication at least partially to respondent Walker.

▇▇▇ New Mexico case law on the use of criminal contempt power does not answer the issue presented by respondent Walker's failure to comply: whether a negligent failure to comply with a court order which sets no specific time for compliance warrants the sanction of criminal contempt. We think such negligence falls outside the scope of indirect criminal contempt. First, the power of finding indirect criminal contempt is to be used sparingly. *See In re Hooker*, 94 N.M. 798, 617 P.2d 1313 (1980) (dealing with civil contempt and finding sufficient evidence to support finding of non-compliance). Second, the Supreme Court, in amending the Rules of Criminal Procedure in 1980, has indicated that the trial court may hold an attorney in contempt for willful disobedience. We think this is some evidence that negligent non-compliance with an order under Rule 27 does not represent an affront to the authority of the trial court which merits the sanction of indirect criminal contempt.

▇▇▇ Further, although there is language in several New Mexico cases to the effect that intent is not required to consti-

tute civil or criminal contempt, such language describes the intent to commit a contempt, to be disrespectful to the court. *See Seven Rivers Farm, Inc. v. Reynolds,* 84 N.M. 789, 508 P.2d 1276 (1973); *State ex rel. Neumann v. Keller,* 36 N.M. 81, 8 P.2d 786 (1932); *State v. Kayser,* 25 N.M. 245, 181 P. 278 (1919). Under these cases, the act must represent criminal contempt and, if it does, the lack of intent to be disrespectful is unimportant. We believe, however, that the act must be a conscious or intentional act, rather than an inadvertent one, because inability to comply is a defense and because the State's interest in criminal contempt is punishment. The trial court has the authority to sanction the State for negligent failure to comply without resorting to contempt. *Chacon v. State,* 88 N.M. 198, 539 P.2d 218 (Ct.App. 1975) (negligent non-disclosure which was material to the defense and prejudiced the defendant represents reversible error); *State v. McGee,* 95 N.M. 317, 621 P.2d 1129 (1980) (non-disclosure due to inadvertence and lack of communication, which did not prejudice defendant, was not grounds for a mistrial).

■ In this case, respondent Walker acted negligently in finding out whether he could comply, because he failed to bring the discovery order and its terms to the attention of the appropriate police officer. We believe that there is insufficient evidence that his failure to bring the order and terms to the attention of the police was a conscious act which represented an indirect criminal contempt, although we respect the efforts of the trial court judge to deter future instances of non-compliance with disclosure rules.

For the reasons stated above, we reverse the convictions of all four respondents and direct the trial court to dismiss the proceedings with prejudice.

DONNELLY, C.J., and ALARID, J., concur.