708 P.2d 1031

**STATE of New Mexico, Petitioner,**

v.

**In re Contempts of Stephen S. WISNIEW-SKI, Chris Wyatt, Ronald R. Walker and Michael F. McCormick, Respondents.**

No. 15354.

Supreme Court of New Mexico.

Sept. 3, 1985.

Rehearing Denied Sept. 18, 1985.

Paul Bardacke, Atty. Gen., William Lazar, Asst. Atty. Gen., Santa Fe, for petitioner.

Michael McCormick, Dist. Atty., Chaves County, John E. Capps, Roswell City Atty.,

Roswell, Ronald Walker, Asst. Dist. Atty., Lea County, Lovington, for respondents.

J. Thomas Sullivan, Appellate Defender, David Stafford, Appellate Defender, Henry R. Quintero, Asst. Appellate Defender, Santa Fe, amicus curiae.

## OPINION

SOSA, Senior Justice.

After a criminal trial wherein the defendant was acquitted of assault and battery charges, the district court ordered district attorneys Michael McCormick and Ronald Walker and police officers Stephen Wisniewski and Chris Wyatt to show cause why they should not be held in contempt. This action came as a result of an asserted negligent failure to comply with the version of NMSA 1978, Crim.P.Rule 27 (Repl. Pamp.1980) then in effect, as well as negligent failure to comply with a discovery order issued by the court. At the conclusion of the show cause hearing, the court held all four respondents in contempt and fined each $100.

The Court of Appeals, 708 P.2d 1048, consolidated the appeals of the four respondents. In its opinion the court concluded that as to respondents Wyatt and Wisniewski, the time for filing an appeal was tolled due to the special circumstances of the case. The appeals court then reversed all four contempt convictions primarily on grounds that the district court could only exercise its contempt powers where there had been wilful non-compliance with the rules of criminal procedure or an intentional act in contravention of the district court's authority. We granted certiorari and now reverse except as to the appeals issue.

The primary issues we consider are 1) whether the appeals of officers Wisniewski and Wyatt were timely; and 2) whether the district court has the authority to utilize its contempt powers to punish negligent failure to comply with the Rules of Criminal Procedure or with a discovery order.

## I. TIMELINESS OF APPEALS

The district court order finding all respondents in contempt was entered on June 8, 1983. Attorneys McCormick and Walker filed notices of appeal within the time period set forth under the then-controlling provisions of NMSA 1978, Crim., Child Ct., Dom.Rel. & W/C App.Rule 202(a) (Repl. Pamp.1983). Officers Wisniewski and Wyatt, however, appealed one day after the ten-day period set forth under Rule 202(a).

■ At the time officers Wisniewski and Wyatt filed their notices of appeal, the provisions of NMSA 1978, Crim.P.Rule 54 (Repl.Pamp.1980) were in effect. Rule 54 required the district court to advise a defendant of the right to appeal and to proceed at state expense if unable to pay the fees incurred in an appeal. In addition, the rule provided that failure to so advise a defendant tolled the time allowed for taking an appeal. This rule by its terms applied to all defendants, although subsequent amendments restricted its application to felony cases only. See NMSA 1978, Crim.P.R. 54 (Cum.Supp.1984).

■ The hearing on the order to show cause why respondents should not be held in contempt was in effect a trial on a plea of not guilty to a contempt charge. In re Doe, 99 N.M. 517, 660 P.2d 607 (Ct.App. 1983). The record of the hearing does not indicate that officers Wisniewski and Wyatt were advised of the right to proceed as indigents. Under the former provisions of Rule 54, the time for taking the officers' appeal was tolled and their appeals were therefore properly considered by the Court of Appeals.

## II. CONTEMPT

The activities which resulted in the contempt citations took place during the course of a criminal prosecution. In this underlying case, defendant Jeff Jasper was charged with two counts of aggravated assault on a peace officer and one count of aggravated battery. These charges arose out of a high-speed chase on October 2, 1982. The prosecution maintained that Jas-

per attempted to collide with two police cars and intentionally rammed a third unmarked police unit. All police radio communications relating to the chase were recorded by the central dispatcher.

· After unsuccessfully attempting to obtain the tape recording, defendant filed a pretrial motion for disclosure under Crim. P.Rule 27 requesting copies of all tape recordings of police radio communications relating to the chase. The district court granted the motion and entered an order requiring production of certain materials requested in the motion, including the tape. During the following month defense counsel initiated a number of requests for the tape to respondent Walker, who was then prosecuting the case. The tape was not forthcoming. Defense counsel was eventually informed by Walker that, according to information Walker had received from the police department, the tape had been erased. The tape of the chase incident had in fact been preserved in the police radio room by a dispatcher pursuant to a request from an officer Grant.

The police department policy for preserving dispatch tapes was established by officer Wyatt and was rather informal. Essentially, the department maintained a core of 31 dispatch tapes. A new tape was placed on the central dispatch recorder each day, the tape number corresponding to the particular day of the month. After recording the communications of the day, each tape was typically placed in numerical rotation and preserved for 30 days, whereupon it was erased and re-recorded. Specific tapes selected for preservation by an officer or the dispatcher were taken out of this monthly rotation and replaced from a small pool of spare tapes. The preserved tapes were not indexed but were filed on a shelf in the radio room set aside for this purpose. These procedures had never been committed to writing and were not widely known throughout the department. Nevertheless, aside from officer Grant and the dispatcher, officer Wyatt also knew that the October 2 tape had been preserved.

Two weeks prior to trial, defense counsel again requested that Walker produce the discovery previously ordered by the district court, and further verify the previous representations that the tape in question had been erased. The evidence is somewhat conflicting as to the nature of communications between Walker and the police department. Walker maintained that he had spoken with officer Wyatt who indicated the tape had been destroyed. Officer Wyatt maintained that he knew the tape had been preserved and knew its whereabouts but could not recall any request by Walker for the recording.

In any event, the day before trial was to begin the tape still had not been produced. At that time, Mr. McCormick, who had taken over the prosecution of the case from Walker, took the outstanding discovery order to the police department. Walker and officer Wisniewski unsuccessfully attempted to locate the tape. However, the recording was eventually located on the radio room shelf by Grant, the officer who had originally requested that the tape be preserved. The tape was then produced in open court but not before both sides had rested. The district judge therefore allowed the defense to reopen its case to disclose this new evidence. The contents of the tape suggested that officers may have attempted to use police cars to block defendant Jasper's path and thus that defendant may not have intended to ram the police vehicles involved. The defendant was acquitted of all assault and battery charges.

Following a show cause hearing, the district court concluded that each of the four respondents should be held in contempt for failure to comply with the requirements imposed by the Rules of Criminal Procedure and the court's discovery order.

### A. Criminal Procedure Rule 27

The Court of Appeals concluded that the district court had no authority under the Rules of Criminal Procedure to impose contempt for negligent non-compliance with

discovery obligations set forth by the Rules.

■ Crim.P.Rule 27(g) provides that where the State fails to disclose certain information within ten days of arraignment, the district court may "enter an order pursuant to Rule 30 or hold the prosecutor in contempt or take other disciplinary action pursuant to Rule 52 of these rules." Under NMSA 1978, Crim.P.Rule 52 (Repl. Pamp.1980), an attorney who "wilfully fails to observe the requirements of these rules, including prescribed time limitations, may be held in contempt of court and subject to disciplinary action." The use of the disjunctive in Rule 27 clearly indicates that three distinct avenues are open to the district court where the State does not produce discovery as required. Following a course under Rule 52 is but one option. Rule 27(g) by its express terms does not bind the district court to the limitations on the exercise of contempt power imposed by Rule 52.

■ Similarly, NMSA 1978 Crim.P.Rule 30 (Repl.Pamp.1980)—the first option available to the district court under Rule 27(g)—does not provide that the district court's powers to enforce compliance with discovery rules fall exclusively within the province of Rule 52. Under Rule 30(b), where any party has failed to comply with its continuing duty of disclosure, the district court may "enter such other order as it deems appropriate under the circumstances, *including but not limited to* holding an attorney in contempt of court pursuant to Rule 52 of these rules." (Emphasis added). Under Rule 30(b), the district court's exercise of its contempt powers is expressly not limited to those instances where exercise of contempt powers under Rule 52 would be proper.

■ That Rule 30(b) does not limit the district court's exercise of contempt powers to wilful violations is consistent with the non-exclusive scheme set forth in Rule 27(g). Neither rule by its express terms provides that the wilfulness provision of Rule 52 shall be the sole basis for the district court's exercise of its contempt powers. We conclude that the exercise of contempt powers by the district court for violation of discovery obligations imposed by the Rules of Criminal Procedure is not limited to wilful violations of those Rules.

### B. Inherent Contempt Powers

■ The district court's power to punish for contempt is reserved to it under N.M. Const. art VI, Section 13. Exercise of the criminal contempt sanction is intended to preserve the authority of and respect for the courts, *State v. Magee Publishing Co.*, 29 N.M. 455, 224 P. 1028 (1924), and includes the violation of a court order. *See State ex rel. Apodoca v. Our Chapel of Memories of New Mexico, Inc.*, 74 N.M. 201, 392 P.2d 347 (1964). Direct contempt consists of contumacious words or acts expressed in the presence of the court while indirect contempt consists of similar misconduct or other disobedient acts performed outside the court's presence. *Roybal v. Martinez*, 92 N.M. 630, 593 P.2d 71 (Ct.App.1979).

The district court fined respondent Walker for indirect criminal contempt. The Court of Appeals determined that the failure of the prosecution to communicate the terms of the district court's discovery order to the police department was at least partially attributable to Walker's negligence. However, the appeals court held that a conscious or intentional act must be the basis for a criminal contempt citation and that Walker's negligent failure to comply with the discovery order fell outside the scope of the district court's contempt powers.

■ A wilfulness requirement for contempt is inconsistent with *Seven Rivers Farms, Inc. v. Reynolds*, 84 N.M. 789, 508 P.2d 1276 (1973). There, a corporation and its officers were held in contempt for violation of a judicial decree limiting the amount of water that could be diverted from a certain basin. On appeal, the corporation argued that it could not be held in criminal contempt since the violations were inadvertent. In affirming the contempt conviction,

this Court followed well-established case law and held that intent was not an essential element of contempt. *See State ex rel. Neumann v. Keller*, 36 N.M. 81, 8 P.2d 786 (1932); *State v. Kaysar*, 25 N.M. 245, 181 P. 278 (1919). Therefore, under *Seven Rivers*, a finding of wilfulness was not required to support the contempts in the instant case.

■■■■■ Furthermore, the district court was well within its inherent contempt powers in remedying a violation of the prosecution's duty to disclose potentially exculpatory evidence. As Rule 27(a)(6) makes clear, the State is required to disclose evidence favorable to a defendant. This action is clearly required by the due process clause of the fourteenth amendment to the United States Constitution. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Although the information on the tape was eventually disclosed to the defense, such disclosure did not take place until the defense had completed its case at trial. Upon learning of the tape's existence, the defense immediately sought and was allowed to reopen its case to present this new information to the jury. We may conclude that this information was favorable to defendant not only because the defense presented it to the jury, but because the tape suggested that defendant Jasper did not intend to ram the police units with his own car. Where there has been a failure to comply with Rule 27, including the obligation to disclose *Brady* material, Rule 27(g) provides for the district court's exercise of its contempt power to enforce strict and timely compliance.

■■■■ We note that the district court's use of contempt powers to punish non-compliance with Rule 27 and a court discovery order extended not only to respondents Walker and McCormick as prosecuting attorneys, but to police officers Wyatt and Wisniewski as well. The *Brady* requirement of disclosing such material applies to all members of the prosecutorial team, *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), including police authorities. *United States v. Butler*, 567

F.2d 885 (9th Cir.1978); *United States v. Deutsch*, 475 F.2d 55 (5th Cir.1973); *United States v. Bryant*, 439 F.2d 642 (D.C.Cir. 1971); *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842 (4th Cir.1964); *People v. Walker*, 180 Colo. 184, 504 P.2d 1098 (1973); *State v. Coney*, 294 So.2d 82 (Fla. 1973); *State v. Johnson*, 223 Kan. 119, 573 P.2d 976 (1977); *State v. Tomblin*, 3 Ohio App.3d 17, 443 N.E.2d 529 (1981). Rule 27 bears out this principle by requiring the State to produce certain materials and provides clear remedies should the State fail to comply. Neither the language of Rule 27 nor the committee commentary thereto suggests an exclusion for police authorities or a limitation to the prosecutor. This wide-ranging duty to disclose exculpatory evidence can only serve to maintain the fairness and integrity of the judicial process.

■■■ In light of the foregoing, we conclude that the district court did not err in issuing contempt citations to all four respondents on the basis of their negligent failure to disclose information required by Rule 27 and the district court's discovery order. The Court of Appeals is accordingly reversed on this issue.

■■■■ In its opinion overturning the convictions, the Court of Appeals also concluded that respondents Wyatt, Wisniewski and McCormick were not negligent. We therefore consider whether the record supports the district court's findings that these respondents were indeed negligent in failing to disclose the exculpatory evidence in this case. The applicable standard is that the evidence is to be viewed in the light most favorable to the district court's findings. *Texas National Theatres, Inc. v. City of Albuquerque*, 97 N.M. 282, 639 P.2d 569 (1982). Conflicting evidence is not re-weighed and the credibility of witnesses not reconsidered. *Lujan v. Pendaries Properties, Inc.*, 96 N.M. 771, 635 P.2d 580 (1981).

■■■■ In this case, during the entire pendency of the underlying criminal prosecution, officer Wyatt knew the October 2

tape had been preserved. The record also reveals that Wyatt was responsible for tape preservation policy but had not committed the policy to writing or otherwise promulgated notice of his system throughout the police department. Respondent Wisniewski, as the police chief and central administrator of the department, did not apprise himself of Wyatt's system, did not see to it that the system was properly implemented and did not know of the tape's existence. In a similar vein, respondent McCormick, as the District Attorney and a prosecutor in the case, was responsible for the failure of his office to disclose the evidence clearly ordered by the district court. There was a serious communication failure between his assistant, Walker, and the police department regarding the discovery order. This resulted in part from the absence of a system for documenting discovery requests from the prosecutor's office to the police department. We conclude there was sufficient basis for the district court's finding that these respondents negligently failed to comply with their duties under the district court discovery order and the Rules of Criminal Procedure.

For the foregoing reasons the Court of Appeals is affirmed insofar as it considered the appeals of respondents Wyatt and Wisniewski but is reversed as to the contempt convictions of all respondents. The cause is remanded to the district court for reinstatement of the contempt citations and the payment of fines.

IT IS SO ORDERED.

FEDERICI, C.J., and WALTERS, J., concur.

RIORDAN and STOWERS, JJ., dissent.

RIORDAN, Justice (dissenting).

I cannot concur with the majority.

While I agree with Justice Stowers' dissent, I believe that it is important to note, as did the Court of Appeals, that Chief Wisniewski and Captain Wyatt did not know of the discovery order and it had never been served on either of them. In regard to former District Attorney McCormick's conduct, my review of the transcript of the contempt proceedings convinces me that he did everything in his power to comply with the discovery order. Therefore, to assure publication of the Court of Appeals' opinion, I adopt, with the following exception, that opinion also as my dissent.

The Court of Appeals seems to leave open the question of whether or not the "three-day mailing rule" applies to filing of a notice of appeal. NMSA 1978, Crim., Child.Ct., Dom.Rel. & W/C App. Rule 302(b) (Repl.Pamp.1983) reads as follows:

> Additional time after service by mail. Whenever a party is required or permitted to do an act within a prescribed period *after service of a paper upon him* and the paper is served by mail, 3 days shall be added to the prescribed period. (Emphasis added.)

I believe that when a jurisdictional act, i.e. filing notice of appeal, filing petition for certiorari, or filing a motion for rehearing, is required to be *filed* by a certain date, it must be *received* by the Clerk of the Court by that date. It has been so construed since the rules were adopted. There are no reported cases directly on point because they have either been refused for filing by the Clerk or dismissed by order when called to the Court's attention. The "three-day rule" only applies to briefs and motions. Indeed, in order to clarify the issue, we have begun to include that language as the affected rules are amended. *See* NMSA 1978, Civ.App.R. 28, (Repl.Pamp. 1984); NMSA 1978, Crim., Child.Ct., Dom. Rel. & W/C App.R. 603, (amended effective October 1, 1985). Apparently we will have to change additional rules to assure that it is clear that when something must be *filed*, that it must be *received* by the deadline and there is no three extra days.

STOWERS, Justice, dissenting.

I dissent.

This case involves an appeal from a district court charge which states, "This is a proceeding in indirect criminal contempt [of

court]." The charge is based on the failure of the prosecutor to comply with an order of discovery pursuant to NMSA 1978, Crim.P.Rule 27 (Repl.Pamp.1980).

In order to reach the issues of this case, we must first reflect on the terminology "indirect criminal contempt" which the district court used in its charge. The word "indirect" simply means that "it is an act committed, not in the presence of the court but a distance from it." 17 Am.Jur.2d, Contempt, § 6, p. 12 (1964). The word "criminal" means that the purpose of the contempt is to vindicate the authority of the court. *State v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957). Contempt is defined as

> [A] *wilful* disregard or disobedience of a public authority. [To be even more specific, it is an act] committed by a person who does any act *in wilful* contravention of [the court's] authority or dignity, or tending to impede or frustrate the administration of justice, or by one who, being under the court's authority as a party to a proceeding therein, *wilfully* disobeys its lawful orders or fails to comply with an undertaking which he has given.

*Black's Law Dictionary,* 390 (4th ed. 1968). (Emphasis added.)

The issues to be considered in this appeal are (1) what constitutes criminal contempt of court, and (2) what is the burden of proof required.

As to the first issue, wilfulness is an essential element of contempt of court. This Court defined wilfulness in the case of *Rio Grande Gas Co. v. Gilbert,* 83 N.M. 274, 278, 491 P.2d 162, 166 (1971) as "* * * a wilful violation of a provision of a statute or regulation is any conscious or *intentional failure* to comply therewith * * * and that no wrongful intent need be shown to make such a failure wilful." (Emphasis added.)

In this case the district court found no intentional violation of the court order or Rule, and I quote "I do find that there was *no intent* on anyone to fail to comply with the court order or the Criminal Rules of Court Procedure."

The majority in their opinion cite the cases of *Seven Rivers Farm, Inc. v. Reynolds,* 84 N.M. 789, 508 P.2d 1276 (1973), *State ex rel. Neumann v. Keller,* 36 N.M. 81, 8 P.2d 786 (1932), and *State v. Kayser,* 25 N.M. 245, 181 P. 278 (1919).

The *Neumann* case stands for the proposition that "[i]t is unnecessary for the accusation to charge the intent in a contempt proceeding," 36 N.M. at 82, 8 P.2d at 787 (quoting *State v. Kayser,* 25 N.M. 245, 181 P. 278, 281). The *Seven Rivers Farm* case, using *Neumann* and *Kayser* as the basis for its reasoning, reached the incorrect conclusion that intent is not an essential element of contempt.

To the extent that the case of *Seven Rivers Farm* is construed to hold that intent is not an element of wilfulness in the definition of contempt it is contrary to the majority view and should be overruled.

The record is clear that there is no wilfulness in this case.

We next consider what is the burden of proof required in a criminal contempt proceeding.

This Court stated in the case of *State ex rel. Bliss v. Greenwood,* 63 N.M. 156, 315 P.2d 223 (1957) that a proceeding for "criminal contempt" is governed by the Rules of Criminal Procedure and defendant's guilt has to be proved beyond a reasonable doubt.

The federal district court also stated that, "In criminal contempt cases, the burden of proof requires the evidence show contempt beyond a reasonable doubt." *In re Contempt Proceedings Against Acuff,* 331 F.Supp. 819 (D.N.M.1971). *See also Yates v. United States,* 316 F.2d 718, 725 (10th Cir.1963).

In the case of *People v. Ziporyn,* 121 Ill.App.3d 1051, 77 Ill.Dec. 329, 332, 460 N.E.2d 385, 388 (1984), the court stated, "Where, as here, defendant has been accused of indirect criminal contempt and where a punitive sanction is sought, the State has the burden of proving the accused guilty beyond a reasonable doubt."

438

The *Ziporyn* court also stated that, "Criminal contempt is a crime and, as such, consists of *an intent* and *an act*, both of which must be proved beyond a reasonable doubt." *People v. Ziporyn*, 329 Ill.Dec. 333, 460 N.E.2d at 389.

There is no such evidence in this record.

The district court had several courses of action at its disposal; however, when the district court chose to proceed in indirect criminal contempt, it was bound by law to establish the necessary elements of contempt. One of the elements the district court failed to establish was wilfulness. The district court also failed to apply the burden of proof which requires the evidence to show contempt beyond a reasonable doubt.

Therefore, I agree with the opinion of the Court of Appeals. The district court should be reversed.